UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.  CASE NO.: 2:22-cr-67-SPC-KCD

LATREL JACKSON

_____/

### AMENDED REPORT AND RECOMMENDATION[1]

Before the Court is Defendant Latrel Jackson's Amended Motion to Withdraw And/Or Vacate Plea Agreement. (Doc. 200.)[2] The Government has responded (Doc. 202), making this matter ripe. For the reasons below, Jackson's motion should be denied.

## I. Background

Jackson has been charged with conspiracy and murder-for-hire. (Doc. 1.) According to the Government, he was hired to kill a local gang member in retaliation for a drug robbery. (*See* Doc. 136.)

After several years and many pretrial motions, Jackson appeared for his final pretrial conference and switched his plea to guilty. (Doc. 148.) In conjunction, Jackson executed a plea agreement with the Government. In its

---

[1] The Court issues this amended report and recommendation to correct a scrivener's error. The Clerk is directed to strike the original and substitute this in its place.

[2] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

final form, the plea agreement explained the sentencing exposure Jackson faced and how his sentence would be determined. (Doc. 151 at 1-2, 15.)[3] There was also a paragraph discussing Jackson's cooperation and its impact:

> Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any [and] all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, ***the government agrees to consider whether such cooperation qualifies as "substantial assistance"*** in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §SKI .1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, ***the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge***

---

[3] The parties amended the plea agreement during the colloquy to clarify certain facts related to one charge. The substantive portions of the plea agreement at issue here were unchanged. (Plea Hr'g Tr. 37:13-51:16.)

> ***that determination, whether by appeal, collateral attack, or otherwise***.

(*Id*. at 4-6 (emphasis added).)

During the ensuing plea colloquy, the Court confirmed that Jackson had read the plea agreement, understood it, and discussed it with counsel. (Plea Hr'g Tr. 8:10-25, 26:3-27:2.) Jackson also testified that he understood the potential penalties, which included a mandatory minimum of life in prison. (*Id*. at 19:8-23.) As for the issue of Jackson's cooperation and a possible sentencing reduction, the Government put this on the record:

> What we have agreed to do is if [Jackson] goes through with this plea today, we intend to go out and meet with him, hear him out, and consider whether his information that he provides arises to substantial assistance. But as to whether he has such information, we haven't even talked to him yet. So that is where we are.

(*Id*. at 28:3-10.) The Court also explained to Jackson that his cooperation did not assure him of any sentencing relief:

> THE COURT: Okay. Then we're going to talk, on page 4, about cooperation, or substantial assistance. That's also part of your plea agreement in paragraph 8. And in that paragraph, the United States agrees to consider filing a motion for downward departure. And actually, it's a pretty long paragraph. It's contained on pages 4 and 5. Did you read carefully over that substantial assistance, that portion of the plea agreement?
>
> THE DEFENDANT: No. I skimmed it. I ain't read it all.
>
> THE COURT: All right. Let's make sure that you read that carefully.
>
> (Defendant reads document.)

3

THE COURT: You read that carefully?

THE DEFENDANT: Yes, ma'am, I read it.

THE COURT: Okay. Basically, the United States is agreeing to consider filing a motion for downward departure under 5K1.1, or the imposition of a sentence below a statutory minimum, if any, pursuant to Title 18 United States Code Section 3553(e) or both. And it talks about completing that substantial assistance prior to sentencing.

And then the Court could consider their motion for substantial assistance at the time of sentencing. Or sometimes that motion for substantial assistance comes after sentencing and the sentence would be reduced.

Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Now the United States reserves it's discretion. So it's up to them to decide whether or not they are going to move the Court, or ask the Court, for a reduction based upon substantial assistance.

Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And I can't make them do that. That's something they are going to have to decide after speaking to you.

Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you agree with that?

THE DEFENDANT: Yes, ma'am.

(*Id.* at 32:22-33:16.) Finally, the Court confirmed that Jackson was "not made any promises or assurances . . . of any kind" outside the plea agreement. (*Id.* at 57:7-13.)

Jackson now moves to set aside his guilty plea. (Doc. 200.) He does not dispute his allocution or deny signing the plea agreement. Rather, according to Jackson, the plea stands invalid because he "was under the belief that the Government would file a 5K motion if he cooperated." (*Id.* at 5.) And it was this "misimpression" that "led him to entering the change of plea." (*Id.*)

## II. Discussion

A criminal defendant may withdraw a guilty plea after the court accepts it, but before sentencing, if he can show "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). This standard is "liberally construed," but there is no absolute right to withdraw a guilty plea. *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988). To determine whether a defendant has shown a "fair and just reason," a district court may consider the totality of the circumstances surrounding the plea. *Id.* at 471. "Factors analyzed include (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Id.* at 471-72.

5

Jackson's request turns on the notion that he expected to receive a downward departure for substantial assistance. But this claim is entirely inconsistent with the record. Jackson's plea agreement gave the Government complete discretion in deciding whether to seek such relief. (Doc. 151 at 4-6.) The Court then highlighted this provision, and Jackson confirmed he understood it. (Plea Hr'g Tr. 32:1-33:2.) And if that was not enough, the point was driven home during the plea colloquy. Jackson was told, in no uncertain terms, that "it's up to [the Government] to decide whether or not they are going to move . . . for a reduction based upon substantial assistance." (*Id.* at 33:3-9.)

Jackson's motion appears motivated by the reality that he failed to qualify for a reduction below the mandatory minimum based on substantial assistance. The Eleventh Circuit confronted similar facts in *United States v. Kirksey*, 283 F. App'x 714 (11th Cir. 2008). There, the defendant sought to withdraw his guilty plea because it was "his understanding that the Government would file a substantial assistance motion at sentencing and that his counsel and the Government had reached a plea deal whereby [he] would receive [such a] sentencing reduction." *Id.* at 715. The court denied relief, finding that the plea colloquy showed the defendant understood the nature of his guilty plea. *Id.* The court also found that "the Government never promised to file a substantial assistance motion." *Id.* "Rather, defense counsel simply

6

told [the defendant] that [he] believed that [defendant] had done enough to earn a 5K 1." *Id.*

The same result should follow here. As in *Kirksey*, the plea colloquy proves that Jackson knowingly pled guilty with help from counsel and a clear understanding of his potential sentence. It also shows that the Government never promised to file a substantial assistance motion, something Jackson admittedly understood. And even if Jackson's lawyer recommended that he plead guilty in the hope (or belief) that a substantial assistance motion was coming, the Government's contrary decision does not constitute a fair and just reason to withdraw the guilty plea. *See, e.g.*, *United States v. Dandridge*, 281 F. App'x 881, 884 (11th Cir. 2008).

Setting aside Jackson's proffered argument and focusing on the abovementioned factors, the same result follows. Jackson had the assistance of counsel throughout the plea negotiations and court proceedings. At the plea colloquy, he was informed of the mandatory minimum sentence and given time to consult with counsel. (Plea Hr'g Tr. 7:3-7, 19:6-23.) Jackson attested that he understood the possible sentence and was satisfied with counsel. (*Id.* at 59:4-6.) He likewise confirmed that he understood his plea, that it was voluntary, and nothing had been promised beyond the plea agreement. (*Id.* at 8:13-25, 57:7-13.) Jackson further acknowledged that he was pleading guilty voluntarily and knowingly. (*Id.* at 60:2-20.) These statements at the plea

7

colloquy are presumed true, and Jackson has presented nothing to suggest otherwise. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (explaining there is a strong presumption of truth for statements made by a defendant during a plea colloquy). Finally, although the government was prepared to go to trial, permitting Jackson to withdraw his plea would waste judicial resources and force the government to re-create its case. "[E]nough judicial resources have been expended in this case." *Buckles*, 843 F.2d at 474*; see also United States v. Midkiff*, 806 F. App'x 678, 682 (11th Cir. 2020).

The timing of Jackson's motion also merits discussion. The delay "between entry of the plea and motion to withdraw . . . may be indicative of defendant's motivation." *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987). While a defendant's "swift change of heart" is suggestive that a guilty plea was entered in haste and confusion, *id.* at 801, "[t]he longer the delay[,] the more substantial the reasons must be as to why the defendant seeks withdrawal," *Buckles*, 843 F.2d at 473. Jackson's request does not constitute a swift change of heart. Rather, under these facts, Jackson's declaration of confusion suggests he is unhappy with his inability to obtain a substantial assistance motion from the Government, thus leaving him to face a minimum life sentence. But the fact that Jackson's sentence may be more severe than he hoped does not justify withdrawing the plea. This was explained to Jackson at the plea hearing. To grant relief in these circumstances "would

[be] to permit [defendant] to use the guilty plea as a means of testing the weight of the potential sentence—a primary ground for denying plea changes." *Gonzalez-Mercado*, 808 F.2d at 801.

One last issue to tidy up. Jackson claims "an evidentiary hearing is required." (Doc. 200 at 6.) Not so. A hearing is unnecessary "if the defendant, in moving to withdraw his guilty plea, only seeks to relitigate representations made by himself, his lawyer, and the prosecutor in open court." *United States v. Brown*, 289 F. App'x 381, 382 (11th Cir. 2008). That is exactly the case here. Despite his repeated affirmations at the plea colloquy, Jackson now claims he misunderstood the Government's obligation to file a motion under § 5K1.1. Yet Jackson offers no "credible evidence that he did not understand the nature of" his plea. *Id.* at 383. Thus, no hearing is needed. *See, e.g.*, *United States v. Miles*, 762 F. App'x 687, 691 (11th Cir. 2019) ("[A] district court does not abuse its discretion in denying an evidentiary hearing when it has conducted thorough Rule 11 inquiries during the plea hearing.").

### III. Conclusion

The core concerns of Fed. R. Crim. P. 11—that Jackson's guilty plea was free of coercion, that he understood the nature of the charges against him, and that he knew and understood the consequences of his guilty plea—have been met here. The record also makes clear that Jackson's plea was "knowing and voluntary" and made with "close assistance of counsel[.]" *Buckles*, 843 F.2d at

9

472. Considering the totality of the circumstances, Jackson's contention that he expected to receive a downward departure for substantial assistance does not present "a fair and just reason" for withdrawing the guilty plea. Thus, it is **RECOMMENDED** that Jackson's Amended Motion to Withdraw And/Or Vacate Plea Agreement (Doc. 200) be **DENIED.**

**ENTERED** in Fort Myers, Florida on July 26, 2024.

*Kyle C. Dudek*
Kyle C. Dudek
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.